Gen. 233]						233

## INSURANCE

### DISCLOSURE OF EXAMINATION REPORTS − TERMINATION OF MANAGING GENERAL AGENTS − LIMITATION OF RISK EXCEPTION

June 4, 1993

*Mr. Joseph Owens*
*Acting Insurance Commissioner*

You have requested our opinion on three issues of statutory construction related to the accreditation process by the National Association of Insurance Commissioners. Specifically, you asked the following questions:

1. May the Insurance Division disclose to insurance regulators and law enforcement officials of another state, or to an agency of the federal government, the results of examination reports conducted pursuant to Article 48A, §34 of the Maryland Code, if the official or agency receiving the information agrees in writing to hold the information confidential?

2. Does Article 48A, §668(c)(3) require 30 days written notice before a managing general agent's contract may be terminated?

3. What meaning is to be given to an exemption in Article 48A, §72(6), which generally sets limits upon the amount and type of risk that certain insurers may take? The exemption in question applies to "any policy or type of coverage as to which the maximum possible loss to the insurer is not readily ascertainable on issuance of the policy."

For the reasons stated below, we conclude as follows:

1. The Insurance Division may disclose examination reports to officials or agencies of other jurisdictions.

2.      A managing general agent's contract may be terminated without 30 days written notice.

3.      The exception in Article 48A, §72(6) for "maximum possible loss[es]" that are "not readily ascertainable" refers primarily to policies that place no limit on the cost of defending against claims.

# I

## Disclosure of Examination Reports

The Insurance Division conducts examinations of its regulated insurers on a periodic basis. The examiners prepare a "preliminary report," which contains their factual findings regarding the solvency of the company. This preliminary report is sent to the insurer for comment. The company may accept the report as drafted, or it may challenge portions of it. You indicated that it is not unusual for preliminary examination reports to be amended after the receipt of comments. After the comment period has expired, the report becomes final, and this "final report" is then filed with the Insurance Commissioner. Historically, the Insurance Division has regarded final reports as public documents and has made them available for inspection.

Maryland law does not contain a specific provision granting insurance regulators or law enforcement personnel from other states or the federal government enhanced rights to examine documents in the Insurance Division's files. Thus, the right of these individuals to inspect examination reports, either preliminary or final, must be analyzed under the general insurance laws and Maryland's Public Information Act.

Maryland's examination statute, Article 48A, §34 does contemplate the issue of confidentiality:

> (4)    The report when filed shall be admissible in evidence, in any action or proceeding brought by the Commissioner against insurer examined, or against its officers or agents, of the facts stated therein. The Commissioner and his examiners may at any time testify and offer other proper evidence as to information secured during the course of the examination, whether or not a

written report of the examination has at that time been either made, served, or filed in the Commissioner's office.

(5) The Commissioner may withhold from public inspection any examination or investigation report for so long as he deems the withholding to be necessary for the protection of the person examined against unwarranted injury or to be in the public interest.

(6) If he deems it to be in the public interest the Commissioner may publish an examination report or a summary of it in one or more newspapers in this State.

Nothing in this statute prevents the Commissioner from making an examination report, or a preliminary examination report, public at any time. We understand that, historically, preliminary reports have not been published, in order to protect the examined company from unfair publicity should the Division determine that the preliminary report is incorrect and requires amendment. The final report has historically been made public, because the company has not challenged the information contained in it or the Commissioner has determined that the information is not incorrect despite a company's protest.

No legal requirement has caused Commissioners past and present to refrain from releasing preliminary reports. Whether to do so is a discretionary determination that could lawfully be made on a case by case basis pursuant to Article 48A, §34(5). The prior practice may well be a sound one, but nothing precludes the Commissioner from determining that the public interest is better served by releasing a report. A policy of selective release to other government officials under pledge of confidentiality would in any event not reflect a significant departure from the prior practice, which is aimed at preventing potentially unwarranted *public* reaction to a preliminary report.

Because the Insurance Code authorizes disclosure of the preliminary reports, the Public Information Act defers to that more specific provision of law, even assuming that these reports contain information otherwise exempt from mandatory disclosure under the Public Information Act. *See* §§10-617(a) and 10-618(a) of the State Government Article.

## II

### Termination of Managing General Agents

Article 48A, §668(b) governs the terms of contracts between managing general agents and the insurers that they manage. A managing general agent is an agent who manages "all or part of the insurance business of an insurer" and who "either separately or together with affiliates, directly or indirectly produces or underwrites gross direct written premiums at least equal to 5% of the insurer's policyholder surplus ...." §665(2)(i)1. The statutory definition goes on to state that, in addition, a managing general agent is one who either "negotiates or binds ceding reinsurance contracts on behalf of an insurer," "[a]djusts or pays claims in excess of $500," *or* "[m]aintains loss reserves from which claims payments may be made." §665(2)(i)2. Thus, claims payments are only one of a number of activities in which a managing general agent may be involved.

Section 668(b) contains certain provisions that must be included in any contract between the managing general agent and the managed insurer. These contracts are to:

> (1) Set forth the responsibilities of each party and specify the division of responsibilities where functions are shared;

> (2) Contain a provision that the insurer may:

> (i) Terminate the contract for cause upon written notice to the managing general agent; and

> (ii) Suspend the managing general agent's underwriting authority during the pendency of any dispute regarding such termination;

By contrast, §668(c), which relates to settlement of claims, states as follows:

> In all cases in which the contract permits the managing general agent to settle claims on behalf of the insurer:
>
> . . .
>
> (3)(i) Any settlement authority granted to the managing general agent may be terminated for cause upon the insurer's providing the managing general agent with 30 days notice of such termination; and
>
> (ii) The insurer may suspend the settlement authority during the pendency of a dispute regarding the cause for termination ....

The statute makes a distinction between termination of a contract and termination of settlement authority. It provides that the agent whose contract is terminated is to receive "written notice," but it does not specify 30 days or any other fixed period of notice. Only the agent whose settlement authority is being terminated is entitled to receive 30 days notice. Apparently the General Assembly was of the view that 30 days is needed to replace an agent who is in the process of negotiating settlements in existing cases in order to effect a smooth transition. By contrast, §668(b)(2)(i) explicitly provides that the insurer may terminate an agent entirely, without any prescribed period of advance notice, if the circumstances warrant.

While this result might seem harsh, it is far from an absurd or illogical construction. One may assume that an agent whose settlement authority is being removed is not negotiating those settlements well. But this fault does not mean that the agent is mishandling funds, or even that the agent has access to the insurer's funds. In cases where the insurer determines that the managing

general agent is mishandling or misappropriating funds, however, the insurer will wish to terminate the agent's authority as quickly as possible. A 30 day notice requirement in those circumstances would prevent insurers from protecting themselves from further defalcation.


# III

## Limitation of Risk Exception

In general, Article 48A, §72 limits the amount of risk that an insurer may take to 10% of its surplus to policyholders. Subsection (6) of this section excludes certain types of insurance from the scope of the section, including life and health insurance, annuities, and "any policy or type of coverage as to which the maximum possible loss to the insurer is not readily ascertainable on issuance of the policy." You asked for assistance in interpreting this opaque language.

We understand that property and casualty policies ordinarily have a limit on the coverage to be provided, and many policies contain limits on the potential cost of defending an insured against a claim. However, there are policies that, while containing coverage limits, do not contain defense limits. For these policies, therefore, the insurer will not be able to determine from the face of the policy the final "loss" that it might sustain were it required to defend its insured. The exception covers these policies.

Certain health insurance policies also are variable. While many contain a lifetime cap, group policies generally do not have one. Under either of these situations, it would be impossible for an insurer to calculate ahead of time whether a particular policy will meet or exceed the 10% limitation. The exception also covers these policies (although they are separately excluded from §72 as health insurance).

**IV**

**Conclusion**

1.     The Insurance Division may disclose examination reports to officials or agencies of other jurisdictions.

2.     A managing general agent's contract may be terminated without 30 days written notice.

3.     The exception in Article 48A, §72(6) for "maximum possible loss[es]" that are "not readily ascertainable" refers primarily to policies that place no limit on the cost of defending against claims.

J. Joseph Curran, Jr.
*Attorney General*

Randi F. Reichel
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*